# THE AMERICAN SURETY COMPANY

*vs.*

## ELIZABETH M. KITZMILLER ET AL., EXECUTORS, ET AL.

*Judgment against Garnishee—Appeal Bond—Extent of Liabilities—Costs—Premiums Paid for Attachment Bond—Taxation of Costs—Conclusiveness.*

Under Code, art. 24, sec. 10, providing for the inclusion, in the costs of a case, of premiums paid a surety company for a bond required to be filed, where an attachment suit for unliquidated damages against a non-resident was instituted, and an appeal was taken by such non-resident from a judgment against the garnishee, the surety on the appeal bond was liable for the amount of initial and renewal premiums paid by the original plaintiff for the attachment bond, such premiums having been determined to be part of the costs by an order from which no appeal was taken. 
pp. 166-172

Costs in an attachment case, including a premium paid to a surety company for the attachment bond, can be recovered in a garnishee case, which depends on the attachment case and is an outcome thereof. 
p. 170

If the garnishee has no more funds in his hands than he admits, and that amount is no more than the plaintiff proves the defendant owes him and his costs, the plaintiff's costs can be paid out of the amount in the hands of the garnishee, and the balance applied to the plaintiff's claim. 
p. 171

Code, art. 9, sec. 13, providing that such costs "as the garnishee shall put the plaintiff to by denying himself to be indebted to the defendant and contesting the same" can be recovered from the garnishee in addition to the funds he has in hand belonging to the defendant, is applicable when the garnishee not only denied that he had such funds in hand, but aided the de-

fendant in continuing the contest until after renewal premiums on the attachment bond had become due, so as to make him liable for such premiums. .                              p. 171

It having been judicially determined that premiums and renewal premiums, paid a surety company for an attachment bond, were part of the costs in the case, and the time for an appeal from the order so determining having expired, it cannot be asserted, in an action on an appeal bond, that such expenditures were excessive or were not part of the costs.    p. 172

A surety company, when sued on an appeal bond in an attachment case, cannot contend that it is not liable for premiums paid for the attachment bond, taxed as part of the costs, on the ground that when it executed the appeal bond it was ignorant of such payments, if such company also executed the attachment bond and consequently itself received the premiums.

pp. 172, 173

*Decided November 16th, 1923.*

Appeal from the Baltimore City Court (GORTER, C. J.).

Action by Elizabeth M. Kitzmiller and others, executors of E. A. Kitzmiller, and Robert M. Duff, partners trading as P. Duff and Sons, against the American Surety Company of New York and the Sugar Products Company, on an appeal bond. From a judgment against the said surety company, it appeals. Affirmed. .

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*James U. Dennis,* for the appellant.

*Charles Lee Merriken* and *William Edgar Byrd,* for the appellees.

Boyd, C. J., delivered the opinion of the Court.

On the 26th day of July, 1918, Elizabeth M. Kitzmiller *et al.,* trading as P. Duff and Sons, appellees, issued an attachment out of the Superior Court of Baltimore City against the Sugar Products Company for unliquidated damages, under what is section 44 of article 9 of the Annotated Code, for the sum of $35,000. As required by that section, a bond in the penalty of $70,000 was given by Robert P. Duff, for and on behalf of P. Duff and Sons (appellees), with the American Surety Company of New York as surety. The attachment was laid in the hands of one Samuel Leibowitz as garnishee, and certain personal property was attached, as per schedule returned by the sheriff. Samuel Leibowitz claimed that personal property as his own, filed a petition and gave bond, which, according to the docket entries, was filed in the attachment case. There was a verdict in favor of the "plaintiff" (apparently meaning claimant), for the property claimed, and one cent damages, on June 2, 1920, and an entry of June 24th, 1920, appears in that case of "Agreed, settled and satisfied. Bond released"—referring to the bond given by the claimant.

The garnishee, Samuel Leibowitz, pleaded *non assumpsit* on behalf of the defendant, and *nulla bona* for himself in the garnishee case. A trial of that case resulted in a verdict in favor of the plaintiffs for $14,000. The garnishee made a motion for a new trial, but it was afterwards withdrawn. The defendant, by its counsel "appearing specially," filed a motion to quash the attachment, and afterwards a motion in arrest of judgment, both of which were overruled. Later, defendant's counsel, "appearing specially for the purpose of taking an appeal," entered an appeal from the order overruling the motion to quash, and from the judgment recovered in the case against the garnishee. No appeal was taken from the ruling of the court upon the motion in arrest of judgment. That appeal is reported as *Sugar Products Co.* v. *Kitzmiller,* in 137 Md. 647, and the judgment was affirmed with costs.

As shown by the opinion in that case, it was agreed in the lower court, by counsel representing the plaintiffs, the defendant, and garnishee, that the suit then to be tried before the jury "is the suit of Elizabeth M. Kitzmiller and others against Samuel Leibowitz, garnishee, *and the short note case,*" and it was stated that "the issues presented to this jury by agreement of counsel for both defendants, the garnishee, and the Sugar Products Company, as well as counsel for the plaintiffs, will be, 'First, as to whether Leibowitz has any funds belonging to the Sugar Products Company, which is a nonresident defendant, a New York corporation; and, Second, whether the Sugar Products Company, the defendant, is indebted to the plaintiff in this short note case.' " The defendant did not appear and make such defenses as it had the right to make in its own name, but made its defense through the garnishee, which was done apparently with the consent of the attorneys representing both. After the mandate from this Court was received in the lower court (February 7th, 1921), the plaintiffs demanded the amount recovered in the judgment against the garnishee, and the American Surety Company paid the judgment, $14,000, with interest, costs in the Court of Appeals and $21.60, costs in the lower court, amounting in all to $15,399.35. Demand was also made on the surety company for $2,100, being the premium paid by the plaintiffs when the attachment was issued, $700, and two renewals of $700 each, amounting in all to $2,100. It was agreed that the payment by the surety company, and the acceptance by the plaintiffs, of the $15,399.35, should not prejudice either party, and this suit is prosecuted to recover only the $2,100, based on the theory that those three payments of $700 each were properly chargeable as costs for which the surety company, which was on the appeal bond, is liable.

The plaintiffs (appellees) filed a petition in the Superior Court of Baltimore City reciting the facts above set out as to the $2,100, and asking that the clerk of that court be au-

thorized and directed to tax as part of the docket costs in the attachment case $2,100, representing the premiums paid upon the attachment bond and renewals. An order *nisi* was passed and the American Surety Company of New York filed an answer denying its liability for them, but on the 19th of July, 1922, an order was passed directing the clerk so to tax the $2,100, as part of the costs in the attachment case. No appeal has been taken from that order, and by this suit the plaintiffs seek to recover the $2,100.

They rely on section 10 of article 24 of the Annotated Code, which provides that "When, in any action or proceeding at law or in equity, or in any proceeding before an orphans' court, a bond is required to be filed, and the surety upon such bond so filed is a surety company authorized by the laws of this State to qualify upon such bonds, then the party entitled to recover or to be allowed his costs in said action or proceeding at law or in equity or in any proceeding before an orphans' court may have included as his costs such reasonable sum as may have been paid by him to such surety company for executing such bond or any renewal thereof or substitution for the same, during the continuance of the trusts," etc. etc.

There is some confusion, owing to the proceedings in the case of the *Sugar Products Company* v. *Kitzmiller* in 137 Md. 647. Just how the Sugar Products Company, the defendant in the attachment case, was permitted to take charge of that case, and the garnishee case, and then appeal as it did, without appearing in the short note case, is not clear. The garnishee had pleaded *non assumpsit* on behalf of the defendant and *nulla bona* for himself, as we have seen above. When the case came on for trial, in December, 1919, Mr. Ashman, counsel for the garnishee, moved the admission to the bar of the Superior Court of Baltimore City of Mr. Clarence M. Lewis, of the New York bar, stating at the time, as shown in 137 Md., "that he was the personal counsel for the defendant, the Sugar Products Company, and wished to participate in

the trial of the case," but stating that the defendant, by so doing, was not submitting to the jurisdiction of the court "for the purpose of a personal judgment, but Mr. Lewis is representing them here for the benefit he gets under the plea I have filed as garnishee." Mr. Ashman then made the statement quoted above as to what issues were being presented to the jury. He further said, "that it is agreed that at the time the attachment was laid in the hands of Samuel Leibowitz by the plaintiffs in this case * * * Leibowitz had $14,000 clear belonging to the Sugar Products Company, and therefore if the plaintiffs in this case establish that the Sugar Products Company is indebted to them at least to that amount, it is agreed that the jury should render a verdict of condemnation condemning $14,000 in the hands of Leibowitz belonging to the Sugar Products Company, and that this condemnation, if so found, will dispose of the claimant's suit and the claimant's suit will be dismissed." As is stated in the opinion in 137 Md.: "The case then proceeded to trial upon the single issue whether the defendant was indebted to the plaintiff as claimed by it" (meaning plaintiffs).

At the conclusion of the plaintiffs' evidence the garnishee moved that certain testimony that had been admitted should be stricken out, which motion was overruled. He then asked for an instruction that the case be withdrawn from the jury, but that was refused and an exception was taken. On the 8th day of December, 1919, the jury rendered a verdict in favor of the plaintiffs for $14,000, and a judgment *nisi* was entered. Ten days later the garnishee filed a motion for a new trial, which was withdrawn on the 19th of December by Mr. Ashman, counsel for the garnishee, and on that day a judgment absolute was entered. After the verdict and after the motion for a new trial had been filed, the defendant, by its counsel, "appeared specially" and filed a motion to quash the attachment, and on the 17th of February, 1920, the same counsel filed a motion in arrest of judgment. On the 23rd

of April, 1920, the motions to quash and in arrest of judgment were overruled. It coming to the knowledge of the court that the clerk had entered the judgment while the motion to quash was still pending, the court, on May 15th, 1920, at the instance of plaintiffs' counsel, struck out the judgment so entered and, on the same day, upon its order, a final judgment was entered as of April 23rd. Then on June 3rd the appeal was taken, which was disposed of on January 21st, 1921, by the opinion reported in 137 Md. While the appeal and the motions just referred to were in the name of the Sugar Products Company, they were in the garnishee case, and the record shows that it was with the consent of the garnishee that the defendant was acting. He was apparently aiding the defendant, and filed pleas which enabled it to cause the delays resulting from the motions, etc., filed in the case.

Under our statute a garnishee can be protected, as he can require the defendant to give security to him for his protection if he proceeds in his name. By section 13 of article 9, the sheriff is prohibited from levying "by way of execution against a garnishee more than the plaintiff's debt and costs, nor more than what the said plaintiff shall make appear to be the value of the property and credits attached in the hands of such garnishee together with such costs only as the garnishee shall put the plaintiff to by denying himself to be indebted to the defendant and contesting the same." By section 16 of that article, the garnishee is authorized "to appear in court on the return day of the attachment, or within four days thereafter and confess the amount of goods and chattels or credits in his hands, and if the plaintiff will not take judgment of condemnation for the amount so acknowledged, but shall claim a larger sum, then the garnishee shall be allowed the costs of suit and reasonable counsel fees to be fixed by the court, unless on final decision the plaintiff shall recover a larger sum than the garnishee acknowledged as aforesaid."

This garnishee denied that he was indebted to the defendant, by pleading *nulla bona* for himself, but the plaintiffs finally got a verdict for $14,000, and the garnishee enabled the defendant to continue the litigation until after the two renewals on the bond were due. The plaintiffs were required to pay the original premium before they could have the attachment issued (section 44 of article 9), and apparently had to pay the renewals to keep the attachment in force, and, under section 10 of article 24, were entitled to have included in the costs such reasonable sums as may have been paid by them to the surety company for executing such bond or any renewal thereof. We do not understand how there can be any difficulty as to whether such costs are actually taxed in the attachment case or in the garnishee case. Under our practice, when credits are attached in the hands of a garnishee, three cases are docketed, the capias case, the attachment case, and later a garnishee case, but the garnishee case depends upon the attachment case and is an outcome from it. It cannot be successfully contended that, although a bond is required in order to issue an attachment for unliquidated damages, a recovery cannot be had in the garnishee case for a premium paid to a surety company in the attachment case, notwithstanding the statute above referred to. If nothing can be reached by an attachment except property or credits in the hands of a third party, he may be garnished and the garnishee case is docketed, but it cannot be contended that the costs in the attachment case cannot be recovered because they were not technically incurred in the garnishee case. As a general rule, perhaps the greater costs are in the attachment case, for, if the defendant is not summoned in the capias case, that goes off the docket unless he voluntarily appears, and if the garnishee admits assets there may be no costs in the garnishee case outside of those for the garnishment, the docket entries, and an appearance fee when allowed. In an attachment, when a bond is required and a premium is paid, it would be properly taxed originally in the attachment case,

and may then be carried over to the garnishee case, where the funds are.

If the garnishee has no more funds in his hands than he admits, and that amount is not more than the plaintiff proves the defendant owes him and his costs, the plaintiff's costs can be paid out of the amount in the hands of the garnishee, and the balance applied to the plaintiff's claim, but in the language of section 13 of article 9, "such costs only as the garnishee shall put the plaintiff to by denying himself to be indebted to the defendant and contesting the same" can be recovered from the garnishee in addition to the funds he has in hand belonging to the defendant. In this case we have stated sufficient facts above to show that the language of the Code is applicable, because the garnishee not only denied that he had funds in his hands belonging to the defendant, but aided the defendant in continuing the contest until after the renewals on the bond given in the attachment case had become due.

It is admitted that, in accordance with an agreement filed in the record between the surety company and the plaintiffs, the plaintiffs did pay said company $700 on July 26th, 1918, $700 on July 26th, 1919, and $700 on July 26th, 1920, and it is recited in the bond sued on in this case that "whereas, the party of the first part was surety on the bond given by the parties of the second part in the attachment case in the proceedings in the Superior Court of Baltimore City out of which the said case and judgment against Leibowitz grew; and, whereas, the parties of the second part have heretofore paid to the party of the first part the initial premium and renewal premiums on the bond so as aforesaid given, amounting in the aggregate to the sum of twenty-one hundred dollars," etc. It is also agreed that neither party was to be prejudiced by the payment or acceptance of that sum.

It also appears in the record that "the petition of the plaintiffs and the answer of the American Surety Company having been heard and duly considered, it is on this, the 19th

day of July, 1922, by the Superior Court of Baltimore City, ordered that the clerk of this court is hereby authorized and directed to tax as part of the docket costs in the attachment case of *Elizabeth M. Kitzmiller et al.* v. *The Sugar Products Company* the sum of twenty-one hundred dollars, representing the premium paid by the plaintiffs for the bond filed in said attachment case." That order was passed in the Superior Court of Baltimore City, and no appeal was taken from it, and the time for taking an appeal has long since expired. Now while we might have had some question, if it was before us for determination, as to whether it was a reasonable sum to be paid under all the circumstances, and we do not want to be understood as conceding the right of surety companies to demand in such cases a renewal premium every year of the same amount as the original premium, as long as the case is pending, the surety company not only in effect admits that it was a reasonable sum, but the Superior Court of Baltimore City determined, in a proceeding to which the plaintiffs and the surety company were parties, that it was proper to include the $2,100 in the costs. Hence, that is not now an open question. It happens that the American Surety Company of New York was on the attachment bond and was also on the appeal bond sued on in this case, and hence it cannot be successfully contended that the surety company did not know of the payments, or that any advantage would be taken of it in requiring it to pay these three sums amounting to $2,100, as part of the costs for which the appeal bond was given. Amongst other things stated in the conditions of that bond, it was provided that the Sugar Products Company shall satisfy and pay to the plaintiffs "in case the said judgment shall be affirmed, as well the damages and costs adjudged in the Superior Court of Baltimore City aforesaid; as also all damages and costs that may be awarded by the Court of Appeals aforesaid." The premium and renewals are a part of the costs as determined by the Superior Court of Baltimore City, and the judgment of that court was "affirmed with costs" in 137 Md.

It is suggested in the defendant's brief that the surety company had not assumed such costs as these, as, when the appeal bond was given, only $21.60 of costs were taxed in the Superior Court, but the company must have known that it was liable for any other costs which were due or which became due under the decisions of this Court, if the judgment was affirmed, and it was aware of the fact that this premium and the renewals had been paid, as they were paid to it. It was presumed to know that under the statute the costs of the premium and renewals could be taxed, and it did in fact know before June 29th, 1921, when it paid the $15,399.35, that the plaintiff claimed the $2,100, and that at the time of said payment there was a suit pending against it on said appeal bond, which was instituted in the Baltimore City Court on the 27th of April, 1921. The agreement referred to above reserved the rights of the respective parties, and an assignment of the judgment against the garnishee had been made to the surety company dated June 10, 1921.

Being of the opinion that the appellant was liable for the premium and the renewals, and that there was no error in the action of the lower court in refusing the prayers or any of them, the judgment must be affirmed.

*Judgment affirmed, the appellant to pay the costs above and below.*